UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

INTERSTATE FIRE & CASUALTY CO.,      Plaintiff,

v.      Civil Action No. 3:15-cv-150-DJH

BFK, INC.,      Defendant.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Interstate Fire & Casualty Co. filed this action seeking a declaratory judgment that it has no duty to defend or indemnify Defendant BFK, Inc. for certain claims asserted against BFK in Ohio state court. (*See* Docket No. 1) BFK has moved to dismiss the case for lack of subject matter jurisdiction, arguing that there is no live controversy for the Court to resolve. (Docket No. 17) Because the Court concludes that Interstate's petition does not present an actual controversy for purposes of the Declaratory Judgment Act, the motion to dismiss will be granted.

**I.    BACKGROUND**

This case is part of a complex web of litigation and business transactions. Defendant BFK was formerly known as Fisher-Klosterman, Inc. In February 2008, some of the old Fisher-Klosterman's assets and liabilities, including its name, were purchased by FKI Acquisition Corp. (D.N. 1, PageID # 3 ¶ 6) The asset purchase agreement provided that BFK would indemnify the new Fisher-Klosterman for costs and expenses incurred in defending claims against Fisher-Klosterman arising out of liabilities it had not assumed. (*Id.*)

Pursuant to a general liability policy issued by Admiral Insurance Company, BFK had products liability coverage with limits of $1,000,000 per occurrence and $2,000,000 aggregate

1

for the period February 29, 2008, to February 29, 2012. (*Id.* ¶ 8) Interstate Fire & Casualty provided excess coverage for the same four-year period in the amounts of $5,000,000 per occurrence and $5,000,000 aggregate. (*Id.*, PageID # 4 ¶ 9) The Interstate policy was subject to the same coverages and exclusions as the Admiral policy except where otherwise indicated. (*Id.*)

In August 2010, Fisher-Klosterman, Inc. was sued in Texas state court by several Valero Refining entities. Valero alleged that it had suffered damages caused by defective Fisher-Klosterman products that were used at Valero refineries. (*Id.* ¶ 7) At the inception of the Valero lawsuit, Admiral provided a defense to Fisher-Klosterman based on the mistaken belief that its insured, BFK (formerly Fisher-Klosterman, Inc.) had been sued. (*Id.* ¶ 10) When the mistake was realized, Valley Forge Insurance Company took over the defense on Fisher-Klosterman's behalf. (*Id.*)

Fisher-Klosterman ultimately settled the Valero suit. (*Id.* ¶ 11) Along with its subsidiary CECO Environmental Corp., Fisher-Klosterman has since filed suit against BFK in Ohio state court, asserting that it is entitled to indemnity under the asset purchase agreement for defense and settlement costs associated with the Valero case. (*Id.*; *see* D.N. 19, PageID # 287-88) Admiral is defending BFK against CECO/Fisher-Klosterman's claims. (D.N. 17-1, PageID # 143)[1]

The Ohio state court case is currently stayed pending resolution of a third lawsuit arising out of the Valero litigation, a declaratory judgment action in the U.S. District Court for the Southern District of Ohio. *See Valley Forge Ins. Co. v. Fisher Klosterman, Inc.*, No. 1:14-cv-792 (S.D. Ohio). In that case, Valley Forge seeks a declaration that it had no duty to defend or indemnify Fisher-Klosterman in the Valero litigation. (D.N. 17-1, PageID # 143-44)

---

[1] BFK's memorandum in support of its motion to dismiss helpfully elaborates on the relevant facts. Interstate disputes the completeness of BFK's factual recitation, but not its accuracy. (*See* D.N. 19, PageID # 289)

The present action was filed on February 17, 2015. In its petition, Interstate asks the Court to declare that it has no obligation to defend or indemnify BFK for the indemnity claim asserted by Fisher-Klosterman in Ohio state court. (*See* D.N. 1, PageID # 14) BFK maintains that Interstate's petition is premature. The Court agrees.

## II. ANALYSIS

This action was brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. The Act provides:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). As in any case, "the first requirement of justiciability is that a claim satisfy the 'case or controversy' requirement of Article III of the Constitution." *Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 844 (6th Cir. 1994) (quoting *Mich. State Chamber of Commerce v. Austin*, 788 F.2d 1178, 1181 (6th Cir. 1986)); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) ("[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941))). Where a party seeks declaratory relief, the Court must determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The dispute must be "definite and concrete"—that is, "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of

facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937) (citations omitted); *see also Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 465 F. Supp. 2d 827, 831 (N.D. Ohio 2006) ("[A] controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." (quoting *Hilliard v. First Fin. Ins. Co.*, No. 91-6238, 1992 U.S. App. LEXIS 17386, *4 (6th Cir. July 16, 1992))).

The Court finds no such controversy between Interstate and BFK here. Whether a live dispute will come into existence is contingent upon a series of variables. First, the declaratory judgment action pending in the Southern District of Ohio must be resolved in Valley Forge's favor—i.e., the court must find that Valley Forge has no duty to defend or indemnify Fisher-Klosterman. Although Interstate asserts that the state court action could proceed with respect to settlement costs even if the federal court found that Valley Forge must indemnify CECO/Fisher-Klosterman for those costs (D.N. 19, PageID # 288), as BFK observes, the logical option for CECO/Fisher-Klosterman in that scenario would be to seek reimbursement from Valley Forge, not BFK. (D.N. 20, PageID # 388) At best, the possibility that CECO/Fisher-Klosterman would continue to pursue indemnity from BFK for the Valero settlement adds yet another layer of uncertainty to BFK's already hypothetical claim.[2]

Next, the Ohio state court must find that BFK is obligated to indemnify CECO/Fisher-Klosterman for the costs of defending and settling the Valero suit. If BFK has no such obligation, the basis for the instant action evaporates. And no decision in the state court case is

---

[2] An even further stretch is Interstate's suggestion that Valley Forge might eventually seek subrogation from BFK if its reimbursement claims against CECO/Fisher-Klosterman failed and CECO/Fisher-Klosterman recovered from Valley Forge. (*See* D.N. 19, PageID # 288)

4

imminent, as that case is currently stayed pending resolution of *Valley Forge v. Fisher Klosterman*.

Finally, the limits of the Admiral policy must be exhausted to trigger any liability on Interstate's part. Interstate insists that there is "potential coverage" under its excess policy in light of Admiral's assertion in a reservation-of-rights letter to BFK that it has exhausted the Admiral policy's $1,000,000 per-occurrence limit by paying $394,044.46 in defense costs and $605,955.54 in settlement.[3] (D.N. 19, PageID # 290; *see* D.N. 19-2) However, as BFK points out, Admiral continues to defend BFK in the Ohio state court case and has taken no action to terminate its defense. (*See* D.N. 19-2, PageID # 367, 370 (explaining that Admiral will defend BFK notwithstanding its position that coverage may have been exhausted)) Further complicating the issue, there is disagreement between Interstate and Admiral, and apparently also between Admiral and BFK, regarding exhaustion of coverage under the Admiral policy. (*See* D.N. 19, PageID # 290 (noting that "Interstate strongly disagrees with [Admiral's] position that the payment of $394,044.46 can be used by Admiral to exhaust its applicable limit"); D.N. 19-2, PageID # 370 (describing disagreement between Admiral and Interstate as to number of "occurrences" arising out of Valero litigation for purposes of the Admiral policy and stating that "Admiral and Interstate have agreed to resolve this dispute in a separate proceeding"); D.N. 20, PageID # 385-86 (asserting that although Admiral sent a reservation-of-rights letter, "it has never

---

[3] Interstate's frequent use of the word "potential"—no fewer than eleven times in reference to its liability—reinforces the Court's conclusion that its claim is purely hypothetical. (*See, e.g.*, D.N. 19, PageID # 290 ("Interstate's potential coverage is invoked due to the reasonable belief that the amount of the claim by CECO . . . will exceed the $394,044.46 remaining on the underlying Admiral policy."); *id.*, PageID # 291 (arguing that the "potential exposure . . . exceeds any underlying coverage remaining on the Admiral policy and thus potentially invokes Interstate's coverage"); *id.*, PageID # 292 (asserting that a coverage determination by this Court "would settle the question of whether Interstate would have a duty to indemnify BFK for what *appears to be* a claim that more *likely* [sic] will exceed the amount of the underlying policy and therefore *potentially* invoke the indemnification duty of Interstate Fire" (emphasis added))

suggested that it has paid anything near $2,000,000 in 'investigating and settling any claim, and in defending any suit,' meaning that those payments have not started to erode the coverage limits provided by the Admiral policy" pursuant to a Supplementary Payments endorsement on the policy)) In any event, BFK has made no demand to Interstate for a defense. (*See* D.N. 20, PageID # 385)

### III. CONCLUSION

Any controversy between Interstate and BFK is not substantial and lacks "sufficient immediacy and reality to warrant" declaratory relief. *MedImmune*, 549 U.S. at 127 (quoting *Maryland Cas. Co.*, 312 U.S. at 273). In the absence of an "actual controversy," the Court has no jurisdiction over Interstate's claim. 28 U.S.C. § 2201(a); *see Kelley*, 17 F.3d at 844. Accordingly, it is hereby

**ORDERED** that BFK's Motion to Dismiss (D.N. 17) is **GRANTED**. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

February 25, 2016

                                              **David J. Hale, Judge**
               &nbsv;                           **United States District Court**